## THE REBECCA R. DOUGLASS.

### (District Court, S. D. New York. February 1, 1918.)

1. CUSTOMS AND USAGES ⊂⊃17—AGREEMENTS—VARIATION.
   A custom or usage as to the payment of port charges by a chartered vessel cannot be permitted to vary a plain and unambiguous agreement making no such provision.

2. SHIPPING ⊂⊃37—CHARTER PARTIES—MERGER.
   While the negotiations between the parties amounted to an oral charter party, yet where libelant, when he reduced it to writing,·as was contemplated should be done, introduced an unauthorized provision, constituting a material variation, the original agreement became invalid, and libelant could not hold respondents to the oral charter party.

In Admiralty. Libel by Edward Lutz against Edwin Allen Douglass, part owner of the schooner Rebecca R. Douglass, and others. Libel dismissed.

MacFarland, Taylor & Costello, of New York City (Willard U. Taylor and Alfred H. Strickland, both of New York City, of counsel), for libelant.

Burlingham, Montgomery & Beecher, of New York City (Roscoe H. Hupper, of New York City, and Frederick Pennell, of Brooklyn, N. Y., of counsel), for respondents.

HAZEL, District Judge. The libelant herein seeks to recover damages for breach of an oral charter party. The respondent, however, contends that there never was a meeting of the minds of the parties, and that the negotiations at Mobile, Ala., in the early part of December, 1915, did not eventuate in a charter party, but merely in an incompleted agreement that the schooner Rebecca R. Douglass should thereafter be chartered in writing for three trips from gulf ports to Cuba or San Domingo, at option.

The evidence shows that the parties met and discussed the conditions of a charter party, specifying the trips, the parties, rate of loading and discharge, and agreed that its terms should be reduced to writing on a specified form, with which the respondent was familiar, and then sent to him for his signature. I am convinced that, when the parties separated, all the provisions of the charter party had been agreed upon, but that, when the writing was received by respondent, who meanwhile had sailed for St. Andrews, Fla., to complete a previous charter, it contained in typewriting a provision that, if vessel discharged at Cuba, the charges were to be account of vessel as customary, while in the printed form there was a provision that the vessel was to be free of all foreign port charges, including pilotage, counsel fees, custom fees, tonnage, towage, etc. The respondent at once objected to paying port charges, claiming that he had not agreed to do so, and declined to sign the charter party.

[1, 2] Libelant's contention is that the verbal charter party was binding, regardless of any arrangement to reduce the same to writing, and that the inclusion without respondent's consent of the provision

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the payment of port charges by the vessel at Cuba does not invalidate the agreement, as such payment was customary. Respondent's refusal to sign the written document may have arisen, as asserted, from the sudden increase in freight rates, of which he had been informed in the interim between the negotiations and the presentation of the written charter party; but such argument becomes immaterial, in view of the evidential fact that there existed an intention to defer completion of the charter party until it was reduced to writing on a specified form. I think it is clear enough that respondent intended the charter party to include only such ordinary provisions as appeared in the specified form—a printed form with which he was familiar—and accordingly that the inclusion of an agreement for the vessel to pay port charges was a material variation of the previous understanding. Even though such custom or usage existed, it cannot be permitted to vary a plain and unambiguous agreement. Great Lakes Coal & Dock Co. v. Seither Transit Co., 220 Fed. 28, 136 C. C. A. 110.

In the case of La Compania Bilbaina v. Spanish American Light & Power Co., 146 U. S. 483, 13 Sup. Ct. 143, 36 L. Ed. 1054, a clause was inserted in the charter party upon which the minds of the parties had not met, and it was contended, as here, that respondent's dissent to its inclusion did not invalidate the binding effect of the original agreement; but the Supreme Court did not accept that view, and decided that, if there was any part of the charter party in regard to which the minds of the parties did not meet, the whole instrument became a nullity as to its provisions. In Starr & Co. v. Galgate Ship Co., 68 Fed. 234, 15 C. C. A. 366, a somewhat similar situation arose. The parties understood that the charter party was to contain a provision for "charterer's" surveyor; but this was afterwards altered, without the consent of the charterer, to read "competent" surveyor. See, also, Pew v. Laughlin (D. C.) 3 Fed. 39. Furthermore, there are adjudications holding that, where a written contract is contemplated, no contract comes into existence until the writing is signed. See Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545.

It appears to me satisfactorily shown in this case that the negotiations between the parties amounted to an oral charter party, but that, when it was reduced to writing, it contained a material variation; therefore the original agreement became and was invalid.

The libel is dismissed, with costs.